IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michael Walton,<br><br>                          Plaintiff,<br><br>vs.<br><br>Lockheed Martin Aircraft Center,<br><br>                          Defendant. | Civil Action No. 6:09-462-HMH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 85] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, for discrimination, harassment, and hostile work environment and state law claims for breach of contract, breach of contract accompanied by fraudulent act, negligent misrepresentation, constructive fraud, and outrage.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The plaintiff was hired on September 27, 2004 as a Level 1 sheet metal mechanic at the defendant's facility, in Greenville, South Carolina. (Pl. Dep. at 54; Decl. Myers ¶ 6.) The plaintiff was hired for this position through the defendant's Sheet Metal Training Program, which is a joint effort in conjunction with Greenville Technical College. (Pl. Dep. at 25, 52.)

The record suggests that the plaintiff was required to progress to sheet metal mechanic Level 2 within three years of his hire at Level 1. (Pl. Dep. at 76-79; Myers Decl. ¶ 6.) The defendant uses a Level 2 Sheet Metal Assessment Test to determine whether

the mechanic possesses the necessary skills to advance. (Myers Declaration ¶ 6.) The plaintiff, after three years of employment, failed that test twice. (Pl. Dep., Ex. 6, 11; Myers. Decl. ¶ 22, 23, 30-31.) As a result, his employment with the defendant was terminated, on June 18, 2008. (Myers Decl. ¶ 33.)

The plaintiff contends that he was subject to workplace harassment and retaliation on account of his race and because he complained about a change in the testing policy. The plaintiff contends that in response to lodging an internal complaint with the defendant in December 2007, a "new company policy" was enacted which resulted in his ultimate termination on June 18, 2008.[1] (Am. Compl. ¶ 20.) The plaintiff complained at that time that he was being singled out for job performance issues by Ricky Clark, his manager, based on his race. *Id*.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue

---

[1] The plaintiff's response brief has not actually argued his claims in this way. He has not identified any policy which was changed or how such change affected his performance or the defendant's decision to terminate his employment. Instead, the plaintiff has generally complained of other retaliatory acts, like improper "write-ups." The Court will address the claims as the plaintiff has now chosen to establish them, however thinly.

2

of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I. Race Discrimination

As stated, the plaintiff contends that he was terminated on account of his race in violation of Title VII. As the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff has implicitly elected to employ the *McDonnell Douglas* burden-shifting proof scheme. (Pl. Resp. at 5.) *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. *Id*. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. *Id*. If the employer does so, the presumption of unlawful discrimination created by

4

the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *Id*.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

**A.** ***Prima Facie* Case**

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met her employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances or otherwise treated favorably. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). The defendant emphatically rejects that he can create issues of fact as to either the last two elements.

5

The defendant has put forward undisputed evidence that it expects its employees will develop the necessary skills to progress to the next "skill level" after a certain number of years' experience at the previous level. (Myers Decl. ¶ 6.) As of September 2007, the plaintiff had been a Level 1 sheet metal mechanic for three years. (Pl. Dep. at 75-76.) Level 1 sheet metal mechanics are expected to progress to Level 2 within three years. (Pl. Dep. at 76-79; Myers Decl. ¶ 6.) The defendant uses a Level 2 Sheet Metal Assessment Test to determine whether the mechanic possesses the necessary skills to advance. (Myers Declaration ¶ 6.) A passing score for the Level 2 assessment is 70 percent. (Pl. Dep. at 80; Myers. Decl. ¶ 22.) In September 2007, Walton failed the assessment. (Pl. Dep., Ex. 6 (Charge of Discrimination) ("I was required to take a job related test and failed."); Myers Decl. ¶ 7.)

In accordance with the defendant's written policy regarding unsatisfactory quality of work, and as a result of failing the Level 2 assessment, the plaintiff was placed on a Performance Improvement Plan ("PIP"). (Pl. Dep. at 91:17-20, Ex. 2; Myers. Decl. ¶ 7.) The PIP contained several objectives and clearly stated that the plaintiff's continued employment with the defendant was contingent on his passing the Level 2 assessment within 90 days. (Pl. Dep. at 86, 92, Ex. 2; Myers. Decl. ¶ 7.)

Beginning November 12, 2007, the plaintiff was placed in on-the-job training with a Technical Trainer Charles Myers to evaluate and measure his performance in accordance with the PIP. (Myers. Decl. ¶ 7.) Pursuant to the PIP, the plaintiff began to attend General Structures training classes which were taught by Myers and offered during the last hour of every workday. (Pl. Dep. at 92-93, 94-95, Ex. 2.) The sessions were provided to assist the plaintiff in developing the skills necessary to pass the Level 2 assessment, and the plaintiff was compensated for the time he spent in training. (Pl. Dep. at 94-95; Myers. Decl. ¶¶ 10-11.) Myers also prepared 30- and 60-day project assignments, evaluations, and practice training exercises. (Myers. Decl. ¶ 9.) The training exercises were designed to simulate the

6

skills needed, including cutting, drilling, locating, and working within tolerances. (Myers. Decl. ¶ 10.)

The plaintiff did fairly well on the 30-day assignment and assessment (with twelve minor discrepancies) and was progressing appropriately in his training. (Pl. Dep., Ex. 3; Myers. Decl. ¶ 13.) Following the 30-day assessment, however, the plaintiff was frequently absent from work. (Myers. Decl. ¶ 14.) To ensure that he had an adequate opportunity for training before being given the 60-day assignment and assessment, the plaintiff's 60-day assessment was extended through May 23, 2008. (Pl. Dep. at 106; Myers. Decl. ¶ 14.) In all, the evidence reveals that the plaintiff attended over 20 General Structures Training classes between his 30- and 60- day assessments. (Pl. Dep. at 106, Ex. 4; Myers. Decl. ¶ 15.) Even still, the plaintiff's 60-day assessment was unsatisfactory due to the nature and quantity of discrepancies in his repair work. (Myers Decl. ¶ 18.)

The plaintiff was originally scheduled to re-take the Level 2 assessment on February 18, 2008. (Pl. Dep. at 101.) Because of his intermittent absences, and to ensure that the plaintiff had sufficient time to train and prepare to take the Level 2 assessment a second time, the plaintiff's re-test date was extended. (Pl. Dep. at 101.) The plaintiff took the Level 2 assessment for the second time on June 18, 2008 and again did not pass. (Pl. Dep., Ex. 11; (Myers. Decl. ¶ 22.) The plaintiff scored a 49 percent (with 70 percent being required to pass). (Myers. Decl. ¶ 22.)

The plaintiff has not put forward any evidence which would permit reasonable debate over (1) whether the passage of the Level 2 assessment test, within 3 years time, was a legitimate performance expectation of the defendant or (2) whether the plaintiff met the demands of the same. In truth, the plaintiff has not responded significantly to the allegation that he failed to meet the defendant's legitimate performance expectations. He has made some summary claims as to his qualifications but has generally made no effort to demonstrate satisfactory performance.

The plaintiff has made various unsubstantiated claims regarding his performance in response, to wit:

> "Plaintiff by his earned licenses showed that he had the basic skills to perform his job." (Pl. Resp. at 4, 7.)
>
> "[H]e was meeting the defendants legitimate job expectations at the time of termination of employment." (Pl. Resp. at 5.)
>
> "Plaintiff has worked as an aircraft mechanic since his termination. . . . Futhur [sic] proving that plaintiff was qualified for the job." (Pl. Resp. at 10.)

These conclusory assertions, however, cannot carry the day. It is rudimentary that the plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [Plaintiff] was meeting [Defendant's] expectations." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). Instead, "'[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" *Id*. (citing Evans). The plaintiff's other evidence is also insufficient.

The plaintiff has submitted various licenses and certifications regarding aviation radio and telecommunications operation. (See Pl. Ex. E.) The plaintiff has not explained or otherwise demonstrated how these certifications prove either that he passed the Level 2 test, itself, or that he was somehow otherwise qualified to do the work of a sheet metal *mechanic*. Facially, these certifications do not purport to relate to any part of the performance of work, which the defendant found deficient as described above.

The plaintiff also contends that one of the errors in his 60-day assessment – installation of rivets – was not corrected on his 30-day assessment, even though the plaintiff claims to have done the work the same way the entire two periods of time. (Pl. Brief at 7.) In other words, the plaintiff complains that the defendant unfairly evaluated him at the 60-day deadline over matters he either performed properly, in fact, or that the defendant failed to correct when it had the opportunity, previously. The plaintiff's objection is not effective.

8

First, he has not actually submitted any evidence of how he performed the work over the 60-day period. There is a picture of installed rivets in his submissions but it is not clear whether it reflects his work or even an example of proper installation. (See Pl. Ex. H.) Second, even if the plaintiff's charge is correct, that he was graded down for his installation in the second assessment for identical but uncriticized performance in the first, it is only one of numerous justifications advanced by the defendant for concluding that his 60-day assessment was unsatisfactory (Pl. Dep. at Ex. 4; Myers. Decl. ¶¶ 17, 18.). The plaintiff has not challenged any of the others. Lastly, the plaintiff's employment was terminated for failing to pass the Level 2 assessment. Whatever errors might exist in the defendant's evaluation of his work at the 60-day assessment, they do not change the fact that he ultimately failed the Level 2 test. The plaintiff offers nothing to the contrary.

Finally, the plaintiff seems to suggest that he either did not fail the Level 2 retest or that the one in evidence is not, in fact, his test. (See Pl. Resp. at 2 "alleged failed skills test", 9 "Plaintiff denies that this is his test.") The Court would make two remarks. First, regardless of the propriety of the actual test submitted, there is no affirmative evidence that he actually passed. To the contrary, the evidence demonstrates that the plaintiff has repeatedly conceded that he failed. (See Pl. Dep. Ex. 5 at DEF 259, Ex. 6 at DEF 227.) Second, these late-hour aspersions are self-serving and cannot create issues of fact.

There is no evidence in the record that the plaintiff was meeting the legitimate performance expectations of the defendant, from which a reasonable jury could find in his favor. The plaintiff has not challenged the truthfulness of the specific performance demands proffered nor has he been able to demonstrate conformity therewith.

For all these same reasons, the plaintiff could never rebut the legitimate, non-discriminatory reason for the termination of his employment – that he failed to demonstrate the necessary skills for the next level of his position, within a three years time. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000). "Job performance and

relative employee qualifications [are] widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960; *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.") As discussed, the plaintiff has not assailed the veracity of the defendant's claim that he failed to pass the requisite test. He has not otherwise offered evidence that the reason given was somehow pretextual. *See Reeves*, 530 U.S. at 144. Even to the extent the defendant was actually *wrong* about the results of his test, there is no evidence that it knew the plaintiff had passed but failed him anyway. *See Hawkins*, 203 F.3d at 279 (holding that where an employer provides a legitimate, nondiscriminatory reasons for its actions, "it is not [the Court's] province to decide whether the reason was wise, fair, **or even correct**, ultimately, so long as it was the true reason for [the employer's action]" (emphasis added).); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003). (stating that "it was up to [the plaintiff] to produce evidence showing that Wal-Mart **did not genuinely believe** that she had lifted the $12.65. It is not enough for her to show that the investigators might have **made a mistake** in their conclusion" (emphasis added)). The plaintiff has no evidence of pretext.

The plaintiff has also failed to create issues of fact regarding the fourth element of his *prima facie* case. He has not identified any similarly situated individual outside the protected class who failed the Level 2 test but was still retained. Significantly, the plaintiff was not the only Level 1 sheet metal mechanic that was placed on a PIP in this same time period – Ed Divine (a white male) and Lee Wolfe (a white male) were also placed on PIPs, which required them to pass the Level 2 assessment in order to remain employed with the defendant. (Pl. Dep. at 91; Myers. Decl. ¶ 24.) Wolfe, failed the Level 2 assessment, was placed on a PIP with the same performance expectations as the plaintiff, but was able to

10

pass his Level 2 assessment upon re-testing. (Pl. Dep. at 169-70; Myers. Decl. ¶ 25.) Divine, was placed on a PIP due to problems with his quality of work. (Pl. Dep. at 169; Myers. Decl. ¶ 26.) Like the plaintiff, Divine was unable to pass the Level 2 assessment after two attempts and was therefore suspended pending disciplinary review and terminated in June 2008. (Pl. Dep. at 169-70; Myers. Decl. ¶¶ 26-29.)

The plaintiff would argue that some difference in the time of the retest, however, as between his retest and Wolfe's and Devine's, resulted in Wolfe and Devine having some training advantage. (See Pl. Resp. at 8.) The argument, as made, is not entirely cogent. But, apart from a complete lack of any evidentiary support for the claim, the plaintiff himself admits that he was given an extension of time and did not retest on February 18, 2008, when Wolfe did. (Pl. Resp. at 7-8.) No reasonable jury could find, on the record at hand, that the plaintiff's performance was affected by some lack of training opportunity. To the contrary, the only evidence of record suggests that the plaintiff was the one singled out for preferential treatment in at least two extensions of time. (Pl. Dep. at 101, 106; Myers. Decl. ¶ 14.) He was unequivocally given *extra* time to conform his performance to the defendant's expectations.

Accordingly, the only evidence before the Court is that employees, who were not members of the protected class, were treated identically to the plaintiff or in some respects maybe even less well. *See Bryant*, 288 F.3d at 133. No issues of fact exist as to the fourth element of the plaintiff's *prima facie* case.

The undersigned cannot recommend that the plaintiff's claim for discriminatory discharge should survive summary judgment. He can neither make a *prima facie* case of discrimination nor rebut the defendant's legitimate, non-discriminatory reason for termination.

**II.     Retaliation**

Next, the plaintiff contends that he was retaliated against for complaining[2] that he was being singled out for job performance issues by his manager, Ricky Clark, based on his race. (Pl. Dep. at 211-12, 228-29, 231-23; see also Am. Compl. ¶ 8.) Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden shifting scheme, as described above, applies in analyzing retaliation claims under Title VII. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). The plaintiff does not attempt to use direct evidence to establish his claim of retaliation.

### A. *Prima Face* Case

In order to establish a *prima facie* case of retaliation, the plaintiff must prove three elements: (1) that he engaged in a protected activity, (2) that an adverse employment action was taken against him, and (3) that there was a causal link between the protected activity and the adverse employment action. *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004); *Bryant*, 333 F.3d 536, 543.

The plaintiff claims that the alleged retaliation took various forms. Principally, the plaintiff contends, in his response brief, that he was written up for absences which were actually approved by "the insurance company" and for other incidents which he contends were misconstrued. (Pl. Resp. at 7.) The Court need not deal with them in any greater specificity. The plaintiff has not put forward any actual evidence that absences were approved or that his version of other incidents can be believed. He has simply proclaimed it. *See id.* But most importantly, the plaintiff has not explained how any of these allegedly improper write-ups were related to his termination. There is no evidence that the defendant

---

[2] As far as the Court can tell, the plaintiff has not explained any of the circumstances or even the actual content of this alleged complaint.

12

terminated the plaintiff's employment for some volume accumulation of write-ups. In fact, the defendant has hardly propounded any such subjective criteria for discharge. Rather, the plaintiff failed a required test. As discussed, a white employee who failed the same test was also terminated. The test represents an objective measure of performance about which the plaintiff cannot quibble, in the absence of some evidence of foul play. The write-ups were not an element of the plaintiff's test score and he has not otherwise explained how the write-ups affected his performance thereon.

Even assuming the plaintiff's version of the events related to the write-ups is completely true, he has failed to tie those matters to any adverse employment action taken against him. As stated, the termination was not a related act because he was not specifically terminated for any write-ups. The plaintiff has not identified any other action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The PIP itself cannot constitute any retaliation or adverse employment action because it pre-dates the alleged complaint about which the retaliation was allegedly motivated. (See Pl. Dep, Ex. 2.) The plaintiff acknowledges that he did not initiate his complaint until December 19, 2007. (Pl. Resp. Br. at 8). The PIP specifically stated that failure to pass the test would result in the plaintiff's termination. (Pl. Dep., Ex. 2.) Thus the requirement to pass the test was imposed prior to the time that he engaged in the alleged protected activity. It cannot be retaliatory. The plaintiff was then afforded more than six months of additional training prior to failing the test again in June 2008. (Walton Dep., Ex. 11; Myers. Decl. ¶ 22.)

The plaintiff has simply failed to establish an adverse employment action which could ever be viewed as causally related to any complaint.

**III.    State Law Claims**

The plaintiff has also pled state law claims for breach of contract, breach of contract accompanied by fraudulent act, negligent misrepresentation, constructive fraud, and outrage. The plaintiff has not met his burden, in any respect, to create issues of fact as to the elements of any breach of contract accompanied by fraudulent act, negligent misrepresentation, constructive fraud, or outrage. (See Pl. Resp. at 8-9.) He does not discuss those causes, identify their respective legal elements, or otherwise offer how he believes the facts of this case satisfy them. He certainly has not produced any evidence material to such claims. The Court would consider them abandoned. To the extent, he sees his response as having implicated those claims, the Rule 56 requirements have certainly not been met. *See* Fed. R. Civ. P. 56.

The Court understands the difficulties of representing oneself. The Court would not mean to belittle the plaintiff's effort. At the same time, it is improvident for the Court to significantly credit the plaintiff's submission beyond its capacity for effectiveness and unfair to the defendant to allow litigation to continue where the record is not developed to a point where any jury could believe the plaintiff's account.

As to the plaintiff's claim for breach of contract, the plaintiff has made some rejoinder. He contends that there are unspoken terms of employment which were not honored. He claims that, prior to termination, he should have been given a chance to go before a "peer review board just like the other employees." (Pl. Resp. at 9.) The plaintiff states that he was told that he would receive a peer review. *Id*. The implication in his brief is that the plaintiff never received one, although he never says so directly. *Id*.

Under South Carolina law, "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). The plaintiff admits that he was an at-will employee. (Pl. Resp. at 9.)

14

An at-will employment arrangement, however, can be modified by an oral promise. *See Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999). Notwithstanding, South Carolina courts are reluctant to transform vague assurances of job security into binding and contractual promises. To be binding, an oral offer must be definite in its terms. *See Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926-27 (S.C. 1999); *Davis v. Orangeburg-Calhoun Law Enforcement Comm'n*, 542 S.E.2d 755, 760 (S.C. Ct. App. 2001).

Additionally, the South Carolina Supreme Court has stated that "[m]andatory, progressive discipline procedures may constitute enforceable promises." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005). "Such procedures typically provide that an employee may be fired only after certain steps are taken." *Id*. The supreme court stated further, "When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id*.

The plaintiff has not produced any evidence of a mandatory written promise or an oral promise of definite terms, upon which the Court might conclude that the at-will arrangement was modified. He vaguely claims that certain promises were made. He has not offered any proof or any policy.[3] The plaintiff's breach of contract claim should be dismissed.

## IV.     Harassment/Hostile Work Environment

Finally, the plaintiff has made no response to the defendant's argument that his claims for harassment and hostile work environment was not properly exhausted. To file a harassment or hostile work environment complaint in federal court, it is rudimentary that the plaintiff must first exhaust his administrative remedies. *See Bryant v. Bell Atl. Md., Inc.*,

---

[3] The plaintiff makes some remarks concerning a promise of "good faith and fair dealing" made by the defendant in its "employee manuals," as a licensed FAA repair station. (Pl. Resp. at 9.) The Court cannot discern any intelligible claim from the argument, whether breach of contract or otherwise. No citations of authority have been included.

15

288 F.3d 124, 132 (4th Cir. 2002). The Fourth Circuit has repeatedly explained that "the EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Id*. (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). As such, for proper review of administrative proceedings, "only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963. When a claim raised in litigation exceeds the scope of the administrative charge, that claim is procedurally barred. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)).

> The EEOC Charge's factual statement reads as follows:
>> I am Black and worked for the above cited employer since September, 2004. My job title was Aircraft Mechanic. In November, 2007 and continuing, I complained I was being discriminated against because of my race. My complaints were relayed to the Ethics Office and higher management. During this time I was required to take a job related test and failed. I was given 90 days to pass. In June, 2008 I failed the test a second time. During this time frame I was out sick. While I was out the testing standards changed and I was not afforded to train the same way as the other two employees. One of the employees failed and was allowed to retest. I was not afforded the same opportunity.
>>
>> I believe my employer's actions are discriminatory and retaliatory for my discrimination complaints. This was done in violation under Title VII of The Civil Rights Act of 1964, as amended.

(Pl. Dep., Ex. 6.)

The factual statement contains no factual allegations which might implicate the type of severe or pervasive conduct required for harassment or hostile work environment claims, *see Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). The plaintiff has made no attempt to explain how his hostile work environment/harassment claims were exhausted in his administrative charge.

16

But, even if the district court concluded that it was, the plaintiff's argument in regards to that claim is typically symptomatic of his entire response – no evidentiary support is given. The plaintiff has hardly alleged any specific incidents of harassment, but as to the ones he has, already discussed herein, (to wit, write ups, etc.) the plaintiff has provided no proof from which a reasonable jury could find in his favor.[4]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 85] be GRANTED as to all claims pending against it.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

August 30, 2010
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page**

---

[4] The plaintiff has also made various references to issues involving events and alleged retaliation from 2005-June 2007. As the defendant contends, such incidents are plainly time-barred, as they occurred well before 300 days prior to the filing of the plaintiff's July 3, 2008 EEOC Charge. *See* 42 U.S.C. § 2000e-5(e) & (e)(1); (Pl. Dep., Ex. 5 (Charge of Discrimination).

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).